UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CENGIZ YILDIRIM                    )
                                   )
          Plaintiff,               )
                                   )     CIVIL ACTION NO.
     v.                            )     16-11780-DPW
                                   )
DOUGLAS DEMOURA                    )
                                   )
          Defendant.               )


MEMORANDUM AND ORDER
November 20, 2017

     Petitioner Cengiz Yildirim seeks a writ of *habeas corpus*
challenging his state court drug convictions.  The Respondent,
his prison custodian, has moved for judgment on the pleadings
pursuant to Fed. R. Civ. P. 12(c).  Finding nothing contrary to
established federal law in the state court convictions, I will
grant Respondent's motion.

## I. BACKGROUND

### A.  *Charged Conduct*

     In June 2010, as part of an investigation conducted by the
Massachusetts State Police Narcotics Unit for Suffolk County,
Trooper Hollis Crowley, in an undercover capacity, was assigned
to purchase narcotics from Petitioner.  In the course of
investigation, the unit had received a phone number of interest
believed to be Yildirim's number by which Trooper Crowley could
contact him.  Trooper Crowley contacted Yildirim on four

separate occasions — June 8, 2010, June 17, 2010, June 29, 2010, and June 30, 2010 — for the purpose of purchasing cocaine. When speaking with Yildirim on the phone, she would request a specific amount of cocaine and subsequently would meet him to make the exchange. On June 8, she purchased $100.00 worth of cocaine; on both June 17 and June 29, she purchased $150.00 worth of cocaine, and on June 30, she purchased $1,100.00 worth of cocaine.

After the final exchange on June 30th, state troopers who had been providing surveillance for the exchange moved in and arrested Yildirim. The troopers, who had earlier secured a search warrant to search Yildirim's apartment, escorted Yildirim and his girlfriend, Erin Darden, to the apartment and executed the search warrant. The evidence seized was removed from the apartment.

Once the search was complete, Trooper Scott Holland interviewed Yildirim in the apartment and recorded the conversation. Yildirim apparently[1] told the troopers that the responsibility was all his and that Darden had nothing to do

---

[1] The trial transcript notes that portions of the recording were played for the jury, but only briefly summarizes the content of what Yildirim said through the Commonwealth's witnesses. Neither a full transcript of the recording nor the recording itself was provided in the record before me. Consequently, the recitation above is a paraphrase that would appear to be uncontested.

with his transactions.

On August 10, 2010, a grand jury indicted Yildirim on two counts of trafficking in cocaine, in violation of MASS. GEN. LAWS ch. 94C § 32E(b), three counts of distribution of cocaine, subsequent offense, in violation of MASS. GEN. LAWS ch. 94C, § 32A(b), and four counts of drug violations near a school, in violation of MASS. GEN. LAWS ch. 94C, § 32J.  [SA 145]

## B.  *Trial*

Yildirim was tried by a jury from June 28, 2011 to June 30, 2011.  At trial, the Commonwealth offered the testimony of Trooper Crowley, in which she described her interactions with Yildirim and the four purchases she made; the testimony of other troopers involved in the investigation, including Trooper Holland who testified regarding the search of Yildirim's apartment and the statement Yildirim gave to the troopers; the testimony of two chemists; and the testimony of a Boston Police Detective.  The Commonwealth also introduced the physical evidence obtained during the investigation, including the cocaine seized in Yildirim's apartment.

During defense's cross-examination of Trooper Crowley on the morning of June 29, 2011, Yildirim's trial counsel asked her if she knew an individual named David Ring, to which she answered affirmatively.  When defense counsel asked whether Ring was a person involved in narcotics, the Commonwealth requested a

3

sidebar discussion.  At sidebar, defense counsel asserted that Ring provided Trooper Crowley with Yildirim's name and suggested that Ring's identity and relationship to the investigation would be relevant to the defense's case.  The Commonwealth requested a brief break to research the issue further.

After the break, the Commonwealth continued to object to defense counsel's inquiry about Ring, prompting the judge to ask defense counsel to make an offer of proof.  Defense counsel replied that "I think the evidence is going to show that David Ring gave this trooper my client's phone number and set up contact with this person, and whether she knows or not I'll find out pretty soon.  David Ring then gave my client a whole bunch of drugs which then are found in his house when he's charged."  Subsequently, defense counsel suggested that Yildirim was going to testify that Ring put the drugs in his house.[2]

The judge ruled that defense counsel could ask Trooper Crowley whether she received the petitioner's number from Ring, whether she had personal knowledge of how drugs ended up in Yildirim's apartment, and whether she had any personal knowledge of Ring's involvement.  Defense counsel objected to the judge's ruling but nevertheless complied with it.

---

[2] Yildirim ultimately did not testify.

When cross-examination resumed, Trooper Crowley again testified that as an undercover drug detective, she knew Ring in her professional capacity. After a series of questions attempting to explore whether Ring was acting as an informant for the state police, questions to which the Commonwealth objected, the judge ruled that defense counsel could not inquire into Ring's involvement with the state police beyond the investigation into Yildirim.

After the lunch recess on June 29, 2011, the judge called counsel up to sidebar to disclose something the clerk observed during Trooper Crowley's testimony. During the testimony, the clerk had passed a note to the judge saying that the clerk saw an attorney in the back of the courtroom nodding yes and no as Trooper Crowley testified, in particular during the testimony about Ring. The judge stated that he "personally didn't observe it" and that after the clerk passed him the note he continued watching the attorney but the attorney "made no such motions after [he] started to observe him." The judge stated that he believed the nodding was a reaction to his evidentiary rulings limiting the scope of cross-examination, which the judge characterized as "not great, but it's a lot better than responding to the testimony."

The judge further noted that it was up to defense counsel "if there's any relief you want or if any discussion needs to be

had" and gave defense counsel until the end of the day "if there's anything you want to do about that." Defense counsel stated that he would think it over, but in the end never lodged any motions or objections related to the incident.

Throughout the rest of the trial, defense counsel was afforded the opportunity to cross-examine the Commonwealth's witnesses about Ring, subject to the same restrictions placed on Trooper Crowley's cross-examination. In the afternoon on June 29, 2011, defense counsel asked Trooper Scott Cooper about Ring. Trooper Cooper testified that Ring talked to Trooper Crowley about illicit dealing in drugs, that Ring gave Trooper Cooper Yildirim's phone number, and that Ring introduced Trooper Crowley to Yildirim. Then, on June 30, 2011, defense counsel cross-examined Trooper Holland and asked him about Ring. Trooper Holland testified that he had heard of the name David Ring and had heard he was involved in Yildirim's case. When asked whether Ring was an informant, Trooper Holland replied "Yeah, he's a rat."

Yildirim was convicted of one count of trafficking in fourteen grams or more of cocaine, one count of trafficking in 200 grams or more of cocaine, and three counts of distribution

of cocaine.[3]  He was sentenced to fifteen years to fifteen years
and one day in state prison.

## C.    *Post-Trial Procedural History*

Yildirim filed a timely appeal of his convictions to the
Massachusetts Appeals Court.  While his appeal was pending, he
filed a motion for post-conviction discovery as to the 200 gram
trafficking count on the relationship between David Ring and the
investigative and prosecution team.  On February 3, 2014, the
judge who presided over his trial denied Yildirim's motion for
post-conviction discovery, finding that Ring's identity was not
newly discovered because Yildirim knew of Ring before the trial.

On November 20, 2015, the Appeals Court upheld all of
Yildirim's convictions and affirmed the denial of the motion for
post-conviction discovery.  *Commonwealth* v. *Yildirim*, 40 N.E.3d
1057, 2015 WL 7356554, at *4 (Mass. App. Ct. 2015).  The Appeals
Court specifically considered and rejected the three theories of
relief Yildirim presents in his current petition: that the judge
impermissibly restricted his ability to cross-examine
prosecution witnesses regarding Ring, that the judge failed to
investigate, *sua sponte*, the effect, if any, of the attorney's
gestures during Trooper Crowley's testimony, and that his

---

[3] The Commonwealth filed a *nolle prosequi* on the four related
school zone charges and on the subsequent offense portions of
the indictments charging distribution of cocaine.

attorney was ineffective for failing to request an investigation into the effect of the attorney's gestures.

As to the first issue of the judge's restrictions on cross-examination, the court stated that although Yildirim had a right under the Sixth Amendment and art. 12 of the Massachusetts Declaration of Rights to cross-examine the prosecution's witnesses, "the judge has discretion to limit cross-examination in certain circumstances, including, as here, where such questioning includes a collateral matter and where the theory of defense is too speculative." *Id.* at *3. The court noted that Yildirim's trial counsel "was permitted to ask the witness about Ring's role in the investigation," but that the judge did not abuse his discretion by preventing inquiry to Ring's prior criminal history. *Id.*

As to the second issue of the attorney's gestures, the court discussed how under Massachusetts state law, "[w]hen a judge is presented with a claim that the jury has been exposed to an extraneous influence, he must determine whether the extraneous material has the potential to prejudice the jury and, if so, he must conduct a *voir dire* examination of the jurors." *Yildirim*, 2015 WL 7356554, at *2 (citing *Commonwealth* v. *Tennison*, 800 N.E.2d 285, 291 (Mass. 2003)). The court found there was no evidence on the record indicating that any of the jurors saw the attorney's gestures. *Id.* Because there was no

evidence from which to find that the jury was exposed to extraneous influence, the court found that the trial judge was not required under Massachusetts law to take further action. *Id.*

Finally, the court found Yildirim had failed to show that his trial counsel was ineffective for failing to request an investigation into the potential effect on the jury of the attorney's gestures. *Yildirim*, 2015 WL 7356554, at *2. Even if it assumed "that a reasonable attorney would have requested an inquiry into the circumstances," the court concluded "the record does not support the conclusion that an inquiry would have uncovered any extraneous influence on the jury." *Id.*

On January 27, 2016, the Supreme Judicial Court declined to conduct further review. *Commonwealth* v. *Yildirim*, 44 N.E.3d 862 (Mass. 2016). Yildirim did not seek a writ of *certiorari* from the United States Supreme Court. Instead, he filed the instant petition.

## II. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), I may not grant a writ of habeas corpus to "any claim that was adjudicated on the merits in state court unless the state court's decision either (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

States,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Brown* v. *Ruane*, 630 F.3d 62, 66-67 (1st Cir. 2011) (quoting 28 U.S.C. § 2254(d)(1)-(2)).

A state court's decision is "contrary to" clearly established federal law "if it 'contradicts the governing law set forth in the Supreme Court's cases or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from its precedent.'" *Id.* at 67 (quoting *John* v. *Russo*, 561 F.3d 88, 96 (1st Cir. 2009)). A state court's decision can involve "an unreasonable application of clearly established federal law if the state court 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams* v. *Taylor*, 529 U.S. 362, 413 (2000)).

### III. ANALYSIS

#### A. *Restrictions on Cross-Examination About David Ring*

In arguing that the trial judge's restrictions on cross-examination denied him the federal constitutional right to present his defense effectively, Petitioner suggests his theory of defense was that Ring had set him up to avoid his own prosecution on criminal charges.

The Constitution grants a criminal defendant the right to have "a meaningful opportunity to present a complete defense." *Holmes* v. *South Carolina*, 547 U.S. 319, 324 (2006).[4]  Balanced against this right is the "broad latitude" enjoyed by states "to establish rules excluding evidence from criminal trials." *United States* v. *Scheffer*, 523 U.S. 303, 308 (1998).  "While the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit a trial judge to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury."  *Holmes*, 547 U.S. at 326.

The general right to present a defense is not easily reduced to specific rules or tests.  Rather, "decisions involving a defendant's constitutional right to present a defense demonstrate the generality of the right and the substantial element of judgment required of trial courts in excluding defense evidence."  *Brown*, 630 F.3d at 72.  In the habeas context, "[t]he more general the rule, the more leeway

_____

[4] The Supreme Court has not resolved whether this right lies in the Due Process Clause of the Fourteenth Amendment, in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, or emerges from the interplay of these provisions. *Crane* v. *Kentucky*, 476 U.S. 683, 690 (1986); *see also Brown*, 630 F.3d at 71 n.12.

[state] courts have in reaching outcomes in case-by-case determinations." *Yarborough* v. *Alvarado*, 541 U.S. 652, 664 (2004). I must accordingly afford the Appeals Court's decision "substantial deference" and may only upset its determination if I "conclude that it falls outside of the 'broader range of reasonable judgements' [sic] that accompanies the application of so general a legal test." *Brown*, 630 F.3d at 73 (quoting *Locke* v. *Cattell*, 476 F.3d 46, 51 (1st Cir. 2007)).

As an initial matter, and as the Appeals Court correctly noted, the trial judge did not exclude all inquiry into Ring's involvement in the case. Yildirim was permitted to cross-examine the government's witnesses about their personal knowledge of Ring and his involvement in Yildirim's case. He elicited testimony from the government's witnesses on these issues, including Trooper Crowley's statement that she knew Ring in her professional capacity as an undercover detective, Trooper Cooper's statement that Ring provided the state police with Yildirim's phone number and introduced Trooper Crowley to Yildirim, and Trooper Holland's description of Ring as "a rat." Such testimony presented the jury with Ring's involvement in the case, provided some support for Yildirim's theory of defense, and would have laid a foundation for the testimony that defense counsel anticipated Yildirim would offer regarding his relationship with Ring.

I cannot say that the Appeals Court's decision to affirm the limits placed on questions about Ring was unreasonable. The questions excluded at trial focused on Ring's own criminal history and involvement with the State Police in cases beyond the petitioner's. For example, Yildirim's counsel asked Trooper Crowley about whether Ring was involved in the sale of marijuana and whether Ring was still providing information to the state police. The Appeals Court did not act unreasonably when it found such questions addressed a collateral matter beyond the scope of the petitioner's trial. Such questions had the potential to confuse the jury by bringing in investigations and events irrelevant to the charges against the petitioner and it would not be unreasonable to find that the inquiries were only obliquely probative of Yildirim's defense theory. *Holmes*, 547 U.S. at 326.

Nor was it unreasonable to find, as the Appeals Court did, that the defense theory was "too speculative" and unsupported by the record. *Yildirim*, 2015 WL 7356554, at *3. After the Commonwealth objected to any questions about Ring, defense counsel explained the testimony he anticipated Yildirim would provide regarding his relationship with Ring. The Appeals Court did not act unreasonably in finding that Yildirim's testimony may have supported a limited inquiry into Ring's involvement, but that further attempts to show that the cocaine belonged to

Ring, particularly through inquiries into Ring's own alleged criminal history, were unsupported by the record. *Holmes*, 547 U.S. at 327 ("[E]vidence proffered by criminal defendants to show that someone else committed the crime . . . may be excluded where it does not sufficiently connect the other person to the crime, as, for example, where the evidence is speculative or remote . . . .").

In his petition, Yildirim does not invoke directly the Sixth Amendment's Confrontation Clause.[5] His failure to invoke this ground explicitly in his petition may itself be sufficient to find that he has waived the issue as grounds for relief. *Logan* v. *Gelb*, 790 F.3d 65, 70 (1st. Cir. 2015) [per curiam]. For the sake of completeness, however, I will also address his arguments regarding the restrictions on cross-examination through the lens of the Confrontation Clause.

The Confrontation Clause guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." U.S. Const. Amend. VI. "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Davis* v. *Alaska*, 415 U.S. 308, 315-16 (1974). The Confrontation Clause does not, however,

_____

[5] Yildirim touched upon the Confrontation Clause briefly in his appeal to the Appeals Court and the Appeals Court framed its analysis of the restrictions on cross-examination in part through the Sixth Amendment. *Yildirim*, 2015 WL 7356554, at *3.

prevent a trial judge from placing "reasonable limits" on cross-examination "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware* v. *Van Arsdall*, 475 U.S. 673, 679 (1986).

Whether analyzed through the right to present a defense or through the Confrontation Clause, the Appeals Court's decision regarding the cross-examination about Ring was neither contrary to nor an unreasonable application of clearly established federal law. As discussed above, the trial judge did permit some cross-examination of the Commonwealth's witnesses regarding Ring's involvement in the case. The Appeals Court could reasonably conclude that the limits placed on inquiry into Ring's criminal history and involvement in other cases were the sort of "reasonable limits" based on concerns about confusion of the issues and relevancy that a trial judge may place on cross-examination without offending the petitioner's Confrontation Clause rights. *Van Arsdall*, 475 U.S. at 679.

For the reasons discussed above, the limits on cross-examination enforced by the trial judge and affirmed by the Appeals Court do not provide grounds upon which I can grant habeas relief.

**B.** **Trial Judge's Failure to Determine Whether Jury Exposed to Extraneous Influence**

Petitioner next argues that the trial judge failed to determine whether the jury was exposed to an extraneous influence. Petitioner asserts that the Commonwealth's failure to prove that the attorney's gestures did not contribute to the guilty verdict requires his conviction be reversed.

The Sixth Amendment guarantees in criminal prosecutions the right to a trial "by an impartial jury." U.S. Const. Amend. VI. "Principles of due process also guarantee a defendant an impartial jury." *Ristaino* v. *Ross*, 424 U.S. 589, 595 n.6 (1976) (citing *Irvin* v. *Dowd*, 366 U.S. 717, 722 (1961); *see also Morgan* v. *Illinois*, 504 U.S. 719, 726 (1992) [White, J.] ("[T]he Fourteenth Amendment's Due Process Clause itself independently require[s] the impartiality of any jury empaneled to try a cause."). Although "[i]mpartiality is not a technical conception," *United States* v. *Wood*, 299 U.S. 123, 145 (1936), an impartial jury is generally understood as one free from biases and free from improper extraneous influences. *Remmer* v. *United States*, 347 U.S. 227, 229 (1954) [Minton, J.]. *See generally Pena-Rodriguez* v. *Colorado*, 137 S. Ct. 855, 861 (2017) ("Like all human institutions, the jury system has its flaws, yet experience shows that fair and impartial verdicts can be reached if the jury follows the court's instructions and undertakes

deliberations that are honest, candid, robust, and based on
common sense.").

At the same time, "due process does not require a new trial
every time a juror has been placed in a potentially compromising
situation." *Smith* v. *Phillips*, 455 U.S. 209, 217 (1982).
Because "it is virtually impossible to shield jurors from every
contact or influence," the Constitution requires simply "a jury
capable and willing to decide the case solely on the evidence
before it, and a trial judge ever watchful to prevent
prejudicial occurrences and to determine the effect of such
occurrences when they happen." *Id.*

It bears repeating that when notified about the attorney's
gestures during Trooper Crowley's testimony, Yildirim's counsel
chose not to object, request an inquiry into the potential
effect on the jurors, move for a mistrial, or make any other
effort to rectify or preserve the issue. The Appeals Court's
decision noted the trial judge's duty to inquire of the jury
"[w]hen a judge is presented with a claim that the jury has been
exposed to an extraneous influence" under Massachusetts state
law. *Yildirim*, 2015 WL 7356554, at *2. The record contains no
evidence indicating that any jurors had observed the attorney's
gestures and therefore no evidence that they had been exposed to
an extraneous influence. The Appeals Court, of course,
concluded that the lack of information in the record as to

17

whether any juror witnessed the gestures was due at least in part to the failure of Yildirim's counsel to seek any relief from the trial judge. *Id.* I will turn to the significance of that failure in the next section of this Memorandum.

The sole question for me to resolve as to this ground is whether clearly established federal law required the trial judge to hold a hearing, *sua sponte*, in order to determine if the jury had been exposed to any extraneous influence. I conclude it did not. In *Sims* v. *Rowland*, the Ninth Circuit considered a habeas corpus petition similarly alleging that "the state court's failure to hold an evidentiary hearing *sua sponte* when presented with evidence of juror bias is contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court." 414 F.3d 1148, 1153 (9th Cir. 2005). The Ninth Circuit held that it was not because "the Supreme Court has not yet decided whether due process requires a trial court to hold a hearing *sua sponte* whenever evidence of juror bias comes to light." *Id.*[6]

To be sure, under both First Circuit and Supreme Court precedent, a judge has certain duties, when presented with a motion or other request by the parties, to hold hearings in order to determine whether a jury has been biased by an

---

[6] In the years since the Ninth Circuit's observation in *Rowland*, the Supreme Court still has not decided this issue.

extraneous influence. *Smith*, 455 U.S. at 215 ("This Court has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias.); *United States* v. *Gaston-Brito*, 64 F.3d 11, 12 (1st Cir. 1995) ("'When a nonfrivolous suggestion is made that a jury may be biased or tainted by some incident, the district court must undertake an adequate inquiry to determine whether the alleged incident occurred and if so, whether it was prejudicial.'") (quoting *United States* v. *Ortiz-Arrigoitia*, 996 F.2d 436, 442 (1st Cir. 1993)). However, as of now, there is simply no Supreme Court precedent clearly establishing that a trial judge must hold a hearing, *sua sponte*, in order to determine if the jury had been exposed to any extraneous influence.

## C.   Defense Counsel's Failure to Object and Move for Mistrial Due to Possible Extraneous Influence on Jury

Finally, petitioner argues that his trial counsel was ineffective and deprived him of an available defense by failing to seek any remedy after being made aware of the attorney's gestures during Trooper Crowley's testimony.

The Sixth Amendment's right to counsel in a criminal proceeding "'is the right to the effective assistance of counsel.'" *Strickland* v. *Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann* v. *Richardson*, 397 U.S. 759, 771 n.14 (1970)).

Under the test for evaluating ineffective assistance of counsel claims formulated in *Strickland*, a defendant must first show that "counsel's representation fell below an objective standard of reasonableness" and second demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694.

Under the prejudice step, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Harrington* v. *Richter*, 562 U.S. 86, 111 (2011). Rather, "[t]he likelihood of a different result must be substantial, not just conceivable." *Id.* at 112. When an ineffective assistance of counsel claim is raised in a habeas petition, § 2254(d) imposes a further burden. The inquiry then "is not whether counsel's actions were reasonable," but rather "is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 105.

The Appeals Court assumed, without deciding, that "a reasonable attorney would have requested an inquiry into the circumstances," but still found that "the record does not support the conclusion that an inquiry would have uncovered any extraneous influence on the jury." *Yildirim*, 2015 WL 7356554,

at *2.[7]  The Appeals Court therefore held that "without the benefit of additional information, we cannot determine whether trial counsel was ineffective as alleged."  *Id.*

It was not unreasonable for the Appeals Court to find that petitioner had failed to prove his ineffective assistance of counsel claim.  Assuming without deciding, as the Appeals Court did, that a reasonable attorney would have sought some form of relief when presented with a potential extraneous influence on the jury, petitioner has not shown that the likelihood of a different result was substantial.  *Harrington*, 562 U.S. at 112. At worst, it could be said that Trooper Crowley was being prompted to respond in a certain way to questions about Ring; it is unclear what effect witnessing such encouragement would have on the credence given by jurors to the statements made by Trooper Crowley, if they had seen them.  Visible prompting by others, in fact, might diminish the credibility of the witness's testimony.

Even under the best case scenario for the Petitioner regarding this incident, the other evidence presented by the Commonwealth overwhelms any likelihood of a different result to

---

[7] The Appeals Court did not cite directly to the two-part *Strickland* inquiry, but cited instead to the framework outlined in *Commonwealth* v. *Saferian*, 315 N.E.2d 878, 882-83 (Mass. 1974).  The First Circuit has held that "for habeas purposes, *Saferian* is a functional equivalent of *Strickland*."  *Ouber* v. *Guarino*, 293 F.3d 19, 32 (1st Cir. 2002).

the trial. In addition to the evidence of repeated hand to hand transactions, the Commonwealth introduced uncontroverted physical evidence placing cocaine in Yildirim's apartment, as well as Yildirim's own recorded statement in which he took responsibility for all four of the drug transactions. In light of such evidence, it was not unreasonable for the Appeals Court to find that Petitioner failed to establish an ineffective assistance of counsel claim under the second — prejudice — prong of *Strickland*.

Petitioner also appears to argue that defense counsel was ineffective because he failed to object and move for a mistrial after the trial judge failed to hold a hearing, *sua sponte*, on the possible extraneous influence of the attorney's gestures on the jury. Because I have found that the judge had no *sua sponte* duty to convene a hearing, I likewise find that defense counsel was not obligated to object or move for a mistrial based on the judge's failure to do so. *Toliver* v. *Hulick*, 295 Fed. App'x 55, 58 (7th Cir. 2008) [per curiam] (trial judge did not have a duty to question the jurors individually after jurors were exposed to improper communication and "since there was no constitutional error on the part of the trial judge, counsel did not perform ineffectively by holding his tongue").

## IV. CONCLUSION

For the reasons discussed above, I grant respondent's

motion for judgment on the pleadings and deny the petition for a writ of habeas corpus.


/s/ Douglas P. Woodlock_____
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE